## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
GERALD SANFORD               :        Civ. No. 3:18CV01019(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL,          :        February 4, 2019
ACTING COMMISSIONER, SOCIAL  :
SECURITY ADMINISTRATION      :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Gerald Sanford ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner. [Doc. #20]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #22].

For the reasons set forth below, defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #22**] is **DENIED,** and plaintiff's Motion for Order Reversing the Decision of the Commissioner [**Doc. #20**] is **GRANTED,** to the extent plaintiff seeks a remand for further administrative proceedings.

# I. __PROCEDURAL HISTORY__[1]

Plaintiff filed an application for SSI on May 3, 2012, alleging disability beginning June 17, 2008. See Certified Transcript of the Administrative Record, Doc. #16-1, compiled on July 15, 2018, (hereinafter "Tr.") at 181-89.[2] Plaintiff's application for SSI was denied initially on June 1, 2012, see Tr. 109-12, and upon reconsideration on November 20, 2012, see Tr. 116-18.

Following the denial of plaintiff's SSI application, on June 12, 2014, plaintiff, represented by Attorney John P. Spilka, appeared and testified by video teleconference at a hearing before Administrative Law Judge Daniel J. Driscoll ("ALJ Driscoll"). See Tr. 35-72. Vocational Expert ("VE") Lawrence P. Takki also testified at the hearing. See Tr. 62-68; see also Tr. 155-57. On July 3, 2014, ALJ Driscoll issued an unfavorable decision. See Tr. 17-34. On July 30, 2015, the Appeals Council denied plaintiff's request for review, thereby making ALJ

---

[1] Plaintiff filed with his motion the parties' Joint Statement of Material Facts. See Doc. #20-2.

[2] Plaintiff previously filed an application for SSI on February 14, 2011, alleging a disability onset date of June 17, 2008. See Tr. 171-80. That application was denied on April 13, 2011. See Tr. 105-08. Plaintiff did not appeal that denial. Thus, the only application under consideration is the application dated May 3, 2012.

Driscoll's July 3, 2014, decision the then-final decision of the Commissioner. See Tr. 1-7.

On September 25, 2015, plaintiff, still represented by Attorney Spilka, filed a complaint in the United States District Court for the District of Connecticut seeking review of ALJ Driscoll's July 3, 2014, decision. See Sanford v. Colvin, No. 3:15CV1412(VLB) (D. Conn. Sept. 25, 2015). On April 18, 2016, defendant filed a Consent Motion to Remand to Agency Under Sentence Four of 42 U.S.C. §405(g). See id. at Doc. #15. On April 20, 2016, Judge Vanessa L. Bryant granted that motion. See id. at Doc. #16. Following the Court's remand, on August 3, 2016, the Appeals Council issued a Notice of Order of Appeals Council Remanding Case to Administrative Law Judge. See Tr. 897-902.

Following the Appeals Council's remand of plaintiff's case, on January 23, 2017, plaintiff, again represented by Attorney Spilka, appeared and testified in person at a second hearing before a different administrative law judge, Alexander Peter Borré (hereinafter the "ALJ" or "ALJ Borré"). See Tr. 818-53. VE Renee Jubry testified at the hearing by telephone. See Tr. 821, Tr. 844-49; see also Tr. 987-89. On April 24, 2017, ALJ Borré issued an unfavorable decision. See Tr. 797-817. On April 20, 2018, the Appeals Council denied plaintiff's request for review, thereby making ALJ Borré's April 24, 2017, decision the final

decision of the Commissioner. <u>See</u> Tr. 785-90. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review. <u>See</u> Doc. #1. He now moves to reverse the Commissioner's decision. [Doc. #20]. On appeal, plaintiff argues:

1. The ALJ erred at step two of the sequential evaluation;

2. The ALJ failed to properly weigh the medical opinion evidence;

3. The ALJ failed to properly assess plaintiff's subjective symptoms of pain; and

4. The ALJ's Residual Functional Capacity ("RFC") determination is undermined by his errors in weighing the opinion evidence and assessing plaintiff's subjective complaints.[3]

<u>See generally</u> Doc. #20-1. As set forth below, the Court finds that the ALJ erred by placing "great weight" on the opinion of the state reviewing, non-examining physician, Dr. Heller. <u>See</u> Tr. 808.

## II.  <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in

_____

[3] The Court has reordered the sequence in which plaintiff has presented the arguments in his motion.

making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles." <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing <u>Treadwell v. Schweiker</u>, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v. Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In

reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 17CV4524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

## III. <u>**SSA LEGAL STANDARD**</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. <u>See</u> 20 C.F.R. §416.920. In the Second Circuit, the test is described as follows:

First, the Secretary considers whether the claimant is
currently engaged in substantial gainful activity. If he
is not, the Secretary next considers whether the
claimant has a "severe impairment" which significantly
limits his physical or mental ability to do basic work
activities. If the claimant suffers such an impairment,
the third inquiry is whether, based solely on medical
evidence, the claimant has an impairment which is listed
in Appendix 1 of the regulations. If the claimant has
such an impairment, the Secretary will consider him
disabled without considering vocational factors such as
age, education, and work experience; the Secretary
presumes that a claimant who is afflicted with a "listed"
impairment is unable to perform substantial gainful
activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's
severe impairment, he has the residual functional
capacity to perform his past work. Finally, if the
claimant is unable to perform his past work, the
Secretary then determines whether there is other work
which the claimant could perform. Under the cases
previously discussed, the claimant bears the burden of
proof as to the first four steps, while the Secretary
must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given [her] residual functional capacity." <u>Gonzalez ex rel.</u>
<u>Guzman v. Dep't of Health and Human Serv.</u>, 360 F. App'x 240, 243
(2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155
(Aug. 26, 2003)); <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir.
2009) (<u>per</u> <u>curiam</u>)). The RFC is what a person is still capable
of doing despite limitations resulting from her physical and
mental impairments. <u>See</u> 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or
disability testified to by the claimant or others; and (4) the
claimant's educational background, age, and work experience."
<u>Bastien v. Califano</u>, 572 F.2d 908, 912 (2d Cir. 1978).
"[E]ligibility for benefits is to be determined in light of the
fact that 'the Social Security Act is a remedial statute to be
broadly construed and liberally applied.'" <u>Id.</u> (quoting <u>Haberman</u>
<u>v. Finch</u>, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  <u>THE ALJ'S DECISION</u>

Following the above-described five-step evaluation process,
ALJ Borré concluded that since the application date of May 3,
2012, through the date of his decision, plaintiff was not
disabled under the Act. <u>See</u> Tr. 801, Tr. 810. At step one, the
ALJ found that plaintiff had not engaged in substantial gainful
activity since May 3, 2012, the application date. <u>See</u> Tr. 803.

At step two, the ALJ found that plaintiff had the severe impairments of: "chronic back strain, right shoulder degenerative joint disease and degenerative joint disease of the knees bilaterally." Id. The ALJ found plaintiff also suffered from the non-severe impairments of "hernia and breathing difficulty." Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See id. The ALJ specifically considered listings 1.02 (major dysfunctions of a joint) and 1.04 (disorders of the spine). See Tr. 803-04.

Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except no climbing of ladders, ropes and scaffolds; no exposure to unprotected heights or other hazards; occasionally climb ramps and stairs, frequently balance, occasionally stoop, kneel, crouch and crawl; occasional overhead reaching bilaterally and frequent fingering and handling.

Tr. 804 (sic). At step four, the ALJ concluded that plaintiff was unable to perform his past relevant work as a "roofer." Tr. 809. At step five, and after considering plaintiff's age, education, work experience and RFC, as well as the testimony of the VE, the ALJ found that other jobs existed in significant

numbers in the national economy that plaintiff could perform.
See Tr. 809-10.

**V.    DISCUSSION**

Plaintiff raises several arguments in support of reversal
or remand, the most compelling of which is that the ALJ erred in
the weight he afforded to the medical opinion evidence.

Plaintiff contends that the ALJ failed to evaluate the
opinions of his treating physician "in accordance with the
applicable law and failed to give sufficient reasons for the
weight accorded to his opinions." Doc. #20-1 at 3. Part of that
argument asserts that the "ALJ erred in giving significant
weight to Dr. Heller's opinion that was provided in 2011 for a
prior SSI disability application." Id. at 6. Defendant responds
that "the ALJ appropriately relied upon the opinion of Dr.
Heller, who reviewed the evidence in the record on March 23,
2011 and provided an assessment that was consistent with
exertionally light work." Doc. #22-1 at 4.

The ALJ afforded "great weight to the opinion of Dr.
Stephen F. Heller," a state reviewing, non-examining physician,
who opined in 2011 (in connection with plaintiff's prior, denied
application) that plaintiff "was able to perform light work with
postural and right overhead reaching limitations." Tr. 808. In
deciding to afford "great weight" to Dr. Heller's opinion, the
ALJ reasoned: "Dr. Heller's opinion is consistent with the

positive findings of tenderness in the right shoulder, knees and

low back with pain on range of motion as well as left knee

crepitus on examination. Exhibits 3F, 7F, 12F, 18F. It is also

consistent with the claimant's level of daily activity as

described above." Id. By contrast, the ALJ afforded "little

weight" to each of the four opinions authored by plaintiff's

long-time treating physician, Dr. Richard A. Matza. Tr. 807-08.

A.    Applicable Law

> "The SSA recognizes a 'treating physician' rule of
> deference to the views of the physician who has engaged
> in the primary treatment of the claimant," Green–
> Younger, 335 F.3d at 106. According to this rule, the
> opinion of a claimant's treating physician as to the
> nature and severity of the impairment is given
> "controlling weight" so long as it "is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in the case record." 20 C.F.R.
> §404.1527(d)(2); see, e.g., Green–Younger, 335 F.3d at
> 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20

C.F.R. §416.927(c).

However, "the opinions even of non-examining sources may

override treating sources' opinions and be given significant

weight, so long as they are supported by sufficient medical

evidence in the record." Correale-Englehart v. Astrue, 687 F.

Supp. 2d 396, 427 (S.D.N.Y. 2010); see also Little v. Colvin,

No. 5:14CV63(MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26,

2015) ("State agency physicians are qualified as experts in the

evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (citation and internal quotation marks omitted), aff'd, 652 F. App'x 25 (2d Cir. 2016); accord Biro v. Comm'r of Soc. Sec., No. 6:17CV06098(EAW), 2018 WL 4666068, at *4 (W.D.N.Y. Sept. 28, 2018). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition. However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." Biro, 2018 WL 4666068, at *4.

B.    Analysis

Dr. Heller opined on March 23, 2011, that plaintiff was capable of light work. See Tr. 80-82. His opinion states that it was a "[c]urrent assessment[.]" Tr. 80. As to plaintiff's exertional limitations, Dr. Heller found, inter alia, that plaintiff could stand and/or walk for a total of six hours in an eight-hour work day and occasionally stoop, kneel, crouch, and crawl. See Tr. 81. Notably, the medical evidence of record upon

which Dr. Heller based his opinion was limited to just two treatment notes authored by Dr. Matza -- one dated January 5, 2011, and the other dated February 2, 2011. See Tr. 79.[4] One record related to plaintiff's right shoulder pain; and the other, to plaintiff's back strain. See id. Dr. Heller reviewed no opinion evidence from Dr. Matza, or any other source. See Tr. 74-75, Tr. 78-79. Dr. Heller's opinion, and the evidence upon which it was based, predates plaintiff's current SSI application by over one year and fails to consider any evidence of record from 2012 through 2017.

That is significant, particularly because evidence from that relevant time period demonstrates plaintiff's knee impairments, which Dr. Heller did not consider.[5] See, e.g., Tr. 582 (October 15, 2013, MRI of the right knee reflecting: "Tear of the inferior surface of the posterior horn of the medial meniscus."); Tr. 1058 (September 22, 2015, MRI of the right knee reflecting "degenerative changes. Horizontal tear of the

---

[4] The denial of plaintiff's prior SSI application states that three other reports were used to decide plaintiff's claim. See Tr. 105. Although the Disability Determination Explanation lists that same information under "Evidence of Record," Tr. 74-75, the "Findings of Fact and Analysis of Evidence" makes specific reference only to the two treatment notes authored by Dr. Matza. See Tr. 78-79.

[5] The evidence from this time period also reflects plaintiff's cervical and low back strains, for which he was being treated by Dr. Matza. See, e.g., Tr. 573, Tr. 574.

interior surface of the posterior horn of the medial meniscus with a moderate knee joint effusion.").

From 2013 to 2016, Dr. Matza saw plaintiff on numerous occasions to address plaintiff's complaints of knee pain (amongst other issues). Dr. Matza's records from this time period reflect examinations of plaintiff's knees, and plaintiff's complaints of knee pain related to internal derangement, arthritis, and meniscal tear(s), for which plaintiff was prescribed narcotic pain medication. See Tr. 577 (Dr. Matza treatment note dated October 28, 2013: "This patient is being followed along for right medial meniscal injury[.] ... He still has pain in his right knee. MRI revealed a undersurface tear of the posterior horn of the medial meniscus. The patient has tenderness in the right knee medial joint line and positive McMurray's. ... Recommend pain management with Percocet, Valium, and Xanax." (sic)); Tr. 578 (Dr. Matza treatment note dated September 30, 2013: "The patient has tenderness in the right knee over the medial joint line with a moderate effusion of the right knee and a positive McMurray."); Tr. 575 (Dr. Matza treatment note dated December 23, 2013: "The patient is being followed along for ... right knee internal derangement. He is still having pain in his right knee[.]"); Tr. 572 (Dr. Matza treatment note dated March 24, 2014: "The patient is being followed along for degenerative arthritis of the left knee. ...

The patient has tenderness of the left knee, with pain on range

of motion[.] ... Recommend Vicodin ES for pain management.");

Tr. 1045 (Dr. Matza treatment note dated September 12, 2016:

"The patient has tenderness in the right knee, with pain on

range of motion of the knee, with normal neurovascular

function[.] ... Impression: ... right knee degenerative

arthritis. ... Recommend that we treat with oxycodone, Xanax,

Biofreeze, and weight loss.") Tr. 1042 (Dr. Matza treatment note

dated December 7, 2016: "This patient is being followed along

for degenerative arthritis of the right knee[.] ... He still has

pain in the right knee[.] ... Recommend use of oxycodone, Xanax,

and Biofreeze.").

Dr. Heller's 2011 opinion was based on a dearth of

information which failed to address the totality of plaintiff's

physical impairments. Thus, because Dr. Heller's opinion was not

based on a full record -- indeed it failed to consider nearly

five years of medical evidence -- the ALJ should not have relied

heavily on that opinion, and certainly should not have allowed

it to override the opinions of Dr. Matza. See, e.g., Tarsia v.

Astrue, 418 F. App'x 16, 18 (2d Cir. 2011) ("Because it is

unclear whether [the state agency medical consultant] reviewed

all of Tarsia's relevant medical information, his opinion is not

'supported by evidence of record' as required to override the

opinion of [the] treating physician[.]"); Jazina v. Berryhill,

No. 3:16CV1470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017) ("The ALJ erred in assigning significant weight to the state agency medical consultants' under-informed opinions and in allowing their opinions to override those of plaintiff's treating physicians."); Beutel v. Berryhill, No. 3:17CV1193(SALM), 2018 WL 3218662, at *7 (D. Conn. July 2, 2018) ("The opinion of the non-examining physician ... was rendered without the benefit of plaintiff's missing treatment records. It was also rendered without the benefit of [the treating source's] opinions. Because that opinion was not based on a full record, the ALJ should not have relied heavily on it.").

Defendant's arguments justifying the ALJ's reliance on Dr. Heller's opinion are misplaced. First, defendant submits that because plaintiff's 2012 SSI application alleged a disability onset date of June 17, 2008 (the same alleged in plaintiff's prior, denied, application), the ALJ's reliance on Dr. Heller's opinion was appropriate because "he still reviewed evidence that plaintiff submitted to support his allegation of disability since June 17, 2008." Doc. #22-1. That argument fails to account for the evidence that post-dates Dr. Heller's opinion. Defendant also does not consider the explicit findings of the ALJ, concluding that plaintiff had "not engaged in substantial gainful activity since May 3, 2012, the application date[.]" Tr. 803 (emphasis added). The ALJ also specifically found that

plaintiff "has not been under a disability ... <u>since May 3, 2012, the date the application was filed</u>." Tr. 801 (emphasis added). The ALJ made no findings as to the time period before that. Thus, any attempt by defendant to connect plaintiff's current application to his previously denied application is unpersuasive.

<u>Second</u>, defendant asserts that "Dr. Heller's opinion is in line with the later opinions of two other State agency physicians, Dr. Golkar and Dr. Khan, who reviewed the evidence in the record on May 31, 2012, and November 19, 2012, respectively, ... and who assessed that plaintiff could do medium work[.]" Doc. #22-1 at 5. That argument ignores the fact that much of the evidence of record, and specifically the evidence relating to plaintiff's knees, also post-dates those two opinions. Accordingly, to the extent the opinions of Dr. Heller, Dr. Golkar, and Dr. Khan are consistent, that is likely because not one of them considered any evidence after November 19, 2012. <u>See</u> Tr. 86 (Evidence of Record before Dr. Golkar); Tr. 87-88 (Findings of Fact and Analysis of Evidence by Dr. Golkar summarizing two of Dr. Matza's treatment records from February and May 2012 relating to plaintiff's back pain); Tr. 96-97 (Evidence of Record before Dr. Khan); Tr. 99-100 (Findings of Fact and Analysis of Evidence by Dr. Khan summarizing two of Dr. Matza's treatment records from August and November 2012 relating

to plaintiff's back pain). Notably, the evidence relating to plaintiff's knees all dates to after 2013. See discussion of evidence, supra. Accordingly, the consistency of these opinions does not support the weight afforded to Dr. Heller's opinion, because each state reviewing, non-examining physician failed to consider roughly five years of evidence, including each of Dr. Matza's four opinions. See Tr. 560-63 (Dr. Matza's May 7, 2013, Medical Report for Incapacity); Tr. 773-76 (Dr. Matza's May 30, 2014, Medical Report for Incapacity); Tr. 779-81 (Dr. Matza's June 3, 2014, Lumbar Spine Medical Source Statement); Tr. 1075-78 (Dr. Matza's January 10, 2017, "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" (sic)).

Third, defendant contends that the opinions of Dr. Heller, Dr. Golkar, and Dr. Khan "are consistent with the treatment notes in the record from 2010 through 2016[.]" Doc. #22-1 at 7. The Court cannot reasonably conclude that each of the state reviewing, non-examining physicians' opinions would remain unchanged had each doctor had the benefit of reviewing Dr. Matza's later treatment records and four opinions. This is particularly so with respect to the state reviewing, non-examining physicians' opinions as to plaintiff's ability to stand and/or walk, stoop, kneel, crouch, and crawl, all of which are contradicted by Dr. Matza's opinions. See Tr. 81, Tr. 89-90, Tr. 101-02. Indeed, in 2017, Dr. Matza (who had been treating

plaintiff "monthly since 4/15/09," see Tr. 779) opined that plaintiff's exertional levels were much more restricted. See Tr. 1075-76. He also opined that plaintiff is "unable to crawl, kneel[.]" Tr. 1076; see also Tr. 779-82 (June 3, 2014, Dr. Matza Opinion with similar exertional restrictions).

Finally, defendant contends that plaintiff's activities of daily living also support the weight afforded to the opinion of Dr. Heller. See Doc. #22-1 at 8. The ALJ relied on plaintiff's "level of daily activity" to support an assignment of "great weight" to Dr. Heller's opinion. Tr. 808.[6] Specifically, throughout his decision, the ALJ points to plaintiff's testimony that "he is able to help care for his household and his 2 year old child." Tr. 807. The ALJ's reliance on those activities to support the weight afforded to the opinion of Dr. Heller was erroneous.

The ALJ's reliance on plaintiff's limited childcare activities fails to recognize the differences between occasional childcare in a home setting "and performing substantial gainful employment in the competitive workplace on a 'regular and continuing basis,' i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule[.]'" Harris v. Colvin, 149 F. Supp. 3d 435, 444 (W.D.N.Y. 2016) (quoting SSR 96-8p, 1996 WL 374184,

---

[6] The ALJ also relied on plaintiff's levels of daily activity to discount the opinions of Dr. Matza. See Tr. 807-08.

at *2 (S.S.A. July 2, 1996)). There "is no evidence that [plaintiff] engaged in any of these activities for sustained periods comparable to those required to hold [substantial gainful employment]." Balsamo, 142 F.3d at 81 (alterations added) (internal quotation marks omitted) (quoting Carroll, 705 F.2d at 643). To the contrary, plaintiff testified that he is unable to "pick up a child[,]" Tr. 832, and that his older daughter helps him with the younger children. See Tr. 824. Plaintiff further testified that his older daughter moved to Connecticut to help plaintiff care for the youngest child, has provided "[a] lot of help" with that child, and changes most of the child's diapers. Tr. 839; see also Tr. 60.

Even if plaintiff is able to perform some household chores, "[t]here are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." Moss v. Colvin, No. 1:13CV731(GHW)(MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014). Indeed, plaintiff testified that his older children perform the majority of the household chores, including: laundry, vacuuming, outdoor chores, and grocery shopping. See Tr. 833; see also Tr. 60. Plaintiff testified he is able to do "[l]ittle bits[]" of cooking and cleaning, like "clean the counter top." Tr. 833. That does not support a finding that plaintiff is able to perform light work.

Defendant cites to portions of the record which reflect plaintiff's activities of daily living that were not explicitly considered by the ALJ, and which allegedly support a finding that plaintiff is capable of light work. See Doc. #22-1 at 8. Defendant asserts:

> He went snowmobiling in 2013 (Tr. 407; see Tr. 59, 834). He went fishing (Tr. 280). He went to church (Tr. 62, 280). He sometimes exercised (Tr. 701, 706-7, 709). He drove (Tr. 52, 278). He went to drive-in movies (Tr. 62). He traveled by walking (Tr. 278). He took public transportation (Tr. 825). He took day trips to the beaches of Rhode Island (Tr. 835). He went out to eat (Tr. 833). He took care of his own personal grooming needs (Tr. 274, 276).

Id. "[T]wo sporadic occurrences such as [fishing and snowmobiling] might indicate merely that [plaintiff] was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981); accord Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 352 (E.D.N.Y. 2010); Kane v. Astrue, No. 11CV6368(MAT), 2012 WL 4510046, at *17 (W.D.N.Y. Sept. 28, 2012). Further, "[i]t is well-settled in the Second Circuit that the capacity to care for oneself does not, in itself, contradict a claim of disability as people should not be penalized for enduring the pain of their disability in order to care for themselves." Moss, 2014 WL 4631884, at *33 (citation and internal quotation marks omitted).

Plaintiff testified that he went to church "twice a month[]" for "[a]bout 45 minutes, an hour." Tr. 62. Although plaintiff testified in 2012 that he drove, Tr. 52, at his second hearing in 2017, he testified that he cannot drive. See Tr. 825. Similarly, in 2012 plaintiff testified that he went to drive-in movies. See Tr. 62. However, at his hearing in 2017, plaintiff testified that he does not go to the movies. See Tr. 833. In 2017, plaintiff also testified that he "like[s] going out to eat[,]" but did not testify that he does go out to eat, or, if he does, the frequency with which he does so. Id. Defendant fails to appreciate that testimony in her brief.

Regardless, defendant essentially suggests that for plaintiff to be found disabled he must be completely unable to function. That is not the case. "To receive benefits under the Social Security Act, one need not be completely helpless or unable to function[.] The mere fact that he is mobile and able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity." Gold v. Sec'y of Health, Ed. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972) (citation and internal quotation marks omitted); accord Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983). Neither the ALJ, nor defendant, appreciated the differences between plaintiff's testimony regarding his daily

activities and the ability to sustain substantial employment on a full-time basis.

For those reasons, the ALJ impermissibly relied on the opinion of Dr. Heller, a state-reviewing, non-examining physician, to the exclusion of that of plaintiff's treating physician, Dr. Matza. Accordingly, remand is appropriate in light of the erroneous weight afforded to the stale opinion of Dr. Heller. In light of this finding, the Court need not reach the merits of plaintiff's remaining arguments. On remand the Commissioner shall address the other claims of error not discussed herein.

Finally, the Court notes that this will be the second remand of plaintiff's case from the District Court. "Sentence four of 42 U.S.C. §405(g) provides that, after reviewing the Commissioner's determination, a court may: 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (quoting Sentence four of 42 U.S.C. §405(g)), as amended on reh'g in part, 416 F.3d 101 (2005). "Reversal for payment of benefits is appropriate where the existing record contains persuasive proof of disability and a remand for further proceedings would serve no further purpose." Saxon v. Astrue,

781 F. Supp. 2d 92, 106 (N.D.N.Y. 2011) (citation and internal quotation marks omitted); see also Munford v. Apfel, No. 97CV5270(HB), 1998 WL 684836, at *2 (S.D.N.Y. Sept. 30, 1998) ("[T]he determination of whether a remand would serve no purpose is a forward-looking analysis. That is, the district court evaluates whether it would be pointless to remand a case since the totality of evidence the ALJ will consider suggests only one result."). Here, the Court does not find that reversal for payment of benefits is appropriate. The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather, a remand for further administrative proceedings is appropriate so that the ALJ may reconsider the weight afforded to the medical opinion evidence of record.

## VI.  CONCLUSION

For the reasons stated, defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #22**] is **DENIED**, and plaintiff's Motion for Order Reversing the Decision of the Commissioner [**Doc. #20**] is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings.

SO ORDERED at New Haven, Connecticut, this 4th day of February, 2019.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
